UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re 307 ASSETS LLC,

      Debtor

-------------------------------------------------------x

SEI INSIEME LLC

      Appellant,

  -v-

307 ASSETS LLC,

      Appellee.

-------------------------------------------------------x

Chapter 11
Case No.  23-10027 (JPM)

No. 23 Civ. 7942 (LTS)

<u>MEMORANDUM ORDER</u>

      Pending before the Court are the appeal of Sei Insieme LLC ("Appellant" or "Sei") of the "Order Confirming Chapter 11 Plan" (docket entry no. 1 (the "Appeal")), issued by the Bankruptcy Court for the Southern District of New York on August 21, 2023, and the motion of 307 Assets LLC ("Appellee" or "307 Assets") to dismiss the Appeal as equitably moot. (Docket entry no. 10 (the "Motion").)  The Court has jurisdiction of this appeal pursuant to 28 U.S.C. section 158(a).

      The Court has reviewed carefully the parties' submissions and, for the following reasons, grants Appellee's motion to dismiss the Appeal.[1]

---

[1] Having reviewed the briefs and the record, the Court finds that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.  FED. R. BANKR. P. 8019(b).

BACKGROUND

The following summary of relevant facts is drawn from the parties' moving papers, the record, and from filings in the foreclosure action against 307 Assets, captioned CREIF II Lender NE LLC v. 307 Assets LLC et al., Index No. 850138/2020 (the "Foreclosure Action"), initiated in the Supreme Court of the State of New York, New York County, and Sei's chapter 11 bankruptcy petition, captioned In re Sei Insieme LLC, No. 22-11670 (JPM) (the "Sei Bankr. Case"), also filed in the Bankruptcy Court for the Southern District of New York. See Anderson v. Rochester-Genesee Reg'l Transp. Auth., 337 F.3d 201, 205 n.4 (2d Cir. 2003) (gathering case law for proposition that courts may take judicial notice of court records in related proceedings).

Sei was formed on March 6, 2012, for the purpose of owning the property located at 307-309 Sixth Avenue, New York, NY (the "Property"). (Docket entry no. 7 ("App't Brief") ¶ 1.) The Property was sold on or about August 4, 2017, by Sei and its sister company to 307 Assets for $17,000,000. (Id. ¶ 2.) In order to finance the purchase, 307 Assets took a mortgage of approximately $8 million in funds secured by a note to Creif 135 LLC (the "Creif Mortgage"). (Id. ¶ 3.) Sei and its sister company took back a purchase money mortgage in the amount of $5 million. (Id. ¶ 4.) The mortgage held by Creif 135 LLC was assigned to an affiliate, Creif II Lender NE LLC, on September 5, 2017. (Foreclosure Action, NYSCEF doc. no. 2 ("Foreclosure Action Complaint") ¶¶ 22, 28.)

The State Foreclosure Action

Following 307 Assets' default on the Creif Mortgage, Creif II Lender NE LLC initiated foreclosure proceedings against 307 Assets on September 24, 2020, in the Supreme Court of the State of New York, County of New York. (See App't Brief ¶ 5; Foreclosure Action

Complaint.) While the foreclosure proceedings were pending, the Creif Mortgage was assigned to 307-309 Sixth Avenue LLC (the "First Mortgagee"), which was then substituted as a plaintiff in the Foreclosure Action. (App't Brief ¶ 7 (citing A000047 of the certified record); see also Foreclosure Action, NYSCEF doc. no. 18.) On June 1, 2022, the Supreme Court signed a judgment for foreclosure and sale of the Property. (Foreclosure Action, NYSCEF doc. no. 54.) The judgment was in the amount of approximately $13.6 million dollars. (Id. at 3-4)

Also in June of 2022, George Filioupolos, beneficial owner of 307 Assets, transferred ownership of the Property to an entity named 307-309 Sixth Owner LLC. (Docket entry no. 8 ("App'ee Brief") at 11.) On October 25, 2022, the referee appointed by the Supreme Court in the Foreclosure Action entered notice that the Property would be sold at public auction, scheduled to take place on December 14, 2022. (Id. at 12; Foreclosure Action, NYSCEF doc. no. 58.)

The Sei Bankruptcy Case

On December 13, 2022, Sei filed a chapter 11 bankruptcy petition to "protect its interest in the Property." (App't Brief ¶ 10; Sei Bankr. Case, docket entry no. 1.) Sei had used its second mortgage on the Property "as part of the collateral for another loan pursuant to a collateral assignment to The Galinn Fund LLC." (Sei Bankr. Case, docket entry no. 2 ¶¶ 3-4.) Although The Galinn Fund LLC had been named and served in the Foreclosure Action, Sei had not. (See Foreclosure Action Complaint; Sei Bankr. Case, docket entry no. 13 ¶ 7.) Sei moved for a temporary restraining order ("TRO") in the Sei Bankruptcy Case on December 14, 2022, seeking a stay of the foreclosure sale scheduled for that afternoon. (Sei Bankr. Case, docket entry no. 2.) Sei was heard on the TRO motion the same day, December 14, 2022, at a remote conference at which representatives for Appellant and the First Mortgagee were present. (Sei

Bankr. Case, docket entry no. 11.)  The Bankruptcy Court issued a fourteen-day TRO at the close of the December 14, 2022, hearing.  (Id. at 17.)

The 307 Assets Bankruptcy Case

On January 9, 2023, 307 Assets filed a petition for chapter 11 bankruptcy in the Bankruptcy Court for the Southern District, captioned In re 307 Assets LLC, 23-10027 (JPM) (the "307 Assets Bankr. Case").[2]  307 Assets filed a proposed disclosure statement and plan of reorganization that same day.  (307 Assets Bankr. Case, docket entry nos. 1, 5, 6.)  The sole asset listed in 307 Assets' petition was the Property, valued at $14.5 million, and its liabilities were listed as approximately $22.6 million.  (307 Assets Bankr. Case, docket entry no. 1, at 8.)

The proposed plan of reorganization included procedures to sell the Property, and organized claims into six classes to be paid from sale proceeds as follows: (1) New York City liens, totaling approximately $83,366, to be paid in full with any applicable interest; (2) the First Mortgagee, 307-309 Sixth Avenue LLC, totaling $15,077,472, to be paid up to the allowed amount of the Class 2 Claim, after payment of administrative expenses, priority tax claims, Class 1 Claims, and Class 4 Claims, with any deficiency after the Property sale to be treated as a Class 5 Claim; (3) the Second Mortgagee, i.e., Sei and its sister company, totaling approximately $7,500,000, to be paid up to the allowed amount of the Class 3 Claim, after payment of administrative expenses, priority tax claims, Class 1 Claims, Class 2 Claims, and Class 4 Claims, with any deficiency after Property sale to be treated as a Class 5 Claim; (4) priority claims under 11 U.S.C. section 507(a)(2)-(7), totaling approximately $0, to be paid in full, plus interest at the applicable statutory rate; (5) general unsecured claims, totaling approximately $38,500, to be

---

[2]  For ease of reference, the Court cites to the corresponding docket entry number of the filings in the 307 Assets Bankruptcy Case.  All documents cited were included in the certified appellate record.

paid up to the allowed amount of Class 5 Claims, after payment of administrative expenses, priority tax claims, and Class 1, 2, 3, and 4 Claims; and (6) interest holders, to be paid after payment of administrative expenses, priority tax claims, and Class 1, 2, 3, 4, and 5 Claims. (307 Assets Bankr. Case, docket entry no. 5, at 6-10.) The proposed plan also stipulated that all outstanding United States Trustee fees shall be paid as they come due. (Id. at 9.) On January 24, 2024, 307 Assets moved for an order approving the disclosure statement and sale procedures proposed in connection with the proposed plan of reorganization. (307 Assets Bankr. Case, docket entry no. 17.)

Following Sei's objections, 307 Assets filed revised disclosure statement and plan documents, clarifying relationships between the various individuals and entities party to the 307 Assets Bankruptcy Case, and an application to employ Meridian Capital Group ("Meridian") as a real estate broker for the Property. (307 Assets Bankr. Case, docket entry nos. 26, 28, 32; docket entry no. 33 (the "Amended Plan").) The proposed sale procedures for the Property and distribution of proceeds to claimants otherwise remained the same. (See Amended Plan.) By order dated April 10, 2023, the Bankruptcy Court approved the amended disclosure statement and sale procedures for the Property, and set the sale date for June 19, 2023. (307 Assets Bankr. Case, docket entry no. 34.)

Sei filed a motion for reconsideration (307 Assets Bankr. Case, docket entry nos. 36-37), arguing that the date set for the sale was not sufficient to allow the broker to obtain the best price, and an ex parte application for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to allow Sei to conduct an examination of, and demand production of documents or files from, various individuals party to the 307 Assets Bankruptcy Case. (307 Assets Bankr. Case, docket entry no. 40.) Sei thereafter filed a motion seeking a stay of the

scheduled sale of the Property, both to allow additional time to market the property and to allow Sei to conduct the Rule 2004 examination, and a motion to shorten the time for notice and for a hearing, given that Sei's motion for a stay was filed on June 9, 2023, ten days before the scheduled sale date. (307 Assets Bankr. Case, docket entry nos. 46, 47.) Following a June 15, 2023, hearing, the Bankruptcy Court adjourned the Property sale to July 18, 2023, and the hearing on the Property sale approval and Amended Plan confirmation to August 3, 2023, and granted Sei's motion for Rule 2004 examination.[3] (307 Assets Bankr. Case, docket entry nos. 50, 55, 56.)

On July 25, 2023, following its Rule 2004 examinations of the requested witnesses, Sei filed various objections to confirmation of the Amended Plan. (307 Assets Bankr. Case, docket entry no. 61, at 2.) Sei also initiated an adversary proceeding the day before the confirmation and sale approval hearing was set to take place. (307 Assets Bankr. Case, docket entry no. 69.) The Amended Plan was ultimately confirmed, and the sale approved, by the Bankruptcy Court at the August 3, 2023 hearing, with the Bankruptcy Court finding that 307 Assets had "complied with the applicable requirements of 11 U.S.C. [sections] 1122, 1123, and 1129(a) and (b), and that [307 Assets] ha[d] satisfied the requirements to sell the [P]roperty free and clear of all interests, pursuant to 11 U.S.C. [section] 363, including 363(m)." (307 Assets Bankr. Case, docket entry no. 80 ("Conf. Hrg. Tr.") at 60-61.) At the close of the August 3, 2023 hearing, 307 Assets sought waiver of the automatic fourteen-day stay of the order confirming the Amended Plan, pursuant to Rule 3020(e) of the Federal Rules of Bankruptcy Procedure, which Sei did not oppose, and the Bankruptcy Court granted. (Id. at 61.)

---

[3]   The motion for reconsideration was denied at the June 15, 2023 hearing, without prejudice to Sei's arguments in connection with the motion to stay the sale of the Property. (307 Assets Bankr. Case, docket entry no. 79, at 8.)

The written order confirming the Amended Plan and approving the sale of the Property was entered on August 21, 2023.  (307 Assets Bankr. Case, docket entry no. 70 (the "Confirmation and Sale Approval Order").)  Sei filed a notice of appeal on September 3, 2023 (307 Assets Bankr. Case, docket entry no. 76), seeking to vacate the Confirmation and Sale Approval Order, but did not seek or otherwise obtain a stay pending the instant Appeal.  307 Assets filed a motion to dismiss the Appeal in the instant case on February 13, 2024, asserting that the appeal is equitably moot.  (Docket entry no. 10.)  The Appeal and motion to dismiss the Appeal are now fully briefed.

## DISCUSSION

"Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re Charter Communs., Inc., 691 F.3d 476, 482-83 (2d Cir. 2012) (citation omitted).  However, "in an equitable mootness dismissal, the district court is not reviewing the bankruptcy court at all, but exercising its own discretion in the first instance." Id. at 483.  In determining whether an appeal is equitably moot, "the district court may rely on the bankruptcy court's factual findings, unless clearly erroneous, and if necessary receive additional evidence." Id.

Under the prudential doctrine of equitable mootness, a bankruptcy appeal should be dismissed as equitably moot, even when it is not constitutionally moot, "'when, during the pendency of an appeal, events occur' such that 'even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" In re Motors Liquidation Co., 829 F.3d 135, 167 (2d Cir. 2016) (quoting In re Chateaugay Corp. ("Chateaugay I"), 988 F.2d 322, 325 (2d Cir. 1993)).  Equitable mootness is not limited to appeals of orders confirming plans of reorganization, but rather has been applied in a "'range of contexts,' including appeals

involving all manner of bankruptcy court orders." In re Windstream Holdings, Inc., 838 F. App'x 634, 637 (2d Cir. 2021) (citing In re BGI, 772 F.3d 102, 109 & n.12 (2d Cir. 2014)).

"[D]ismissal is appropriate when the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal." Chateaugay I, 988 F.2d at 322 (internal quotation marks and citation omitted). In the Second Circuit, "a bankruptcy appeal is presumed equitably moot when the debtor's reorganization plan has been substantially consummated." In re BGI, Inc., 772 F.3d at 108. Under the Bankruptcy Code, "substantial consummation" consists of:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C.A. § 1101(2) (Westlaw through P.L. 118-82).

To obtain relief in these circumstances, a claimant must demonstrate that its requested relief is nevertheless warranted by establishing each of the so-called "Chateaugay II factors":

> [1] the court can still order some effective relief;
> [2] such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
> [3] such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;
> [4] the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
> [5] the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order[,] if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

In re BGI, Inc., 772 F.3d at 108 (citing In re Chateaugay Corp. ("Chateaugay II"), 10 F.3d 944, 952-53 (2d Cir. 1993)).

Courts have also applied the Chateaugay II factors in analyzing whether an appeal of an unstayed bankruptcy transaction is equitably moot due to a "comprehensive change in circumstances." See, e.g., In re PC Liquidation Corp., No. 06-CV-1935-SJF, 2008 WL 199457, at *5 (E.D.N.Y. Jan. 17, 2008), cited with approval in In re BGI, Inc., 772 F.3d at 109; see also, e.g., In re RS Old Mill LLC, No. 20-CV-743-VB, 2020 U.S. Dist. LEXIS 82039, at *11-12 (S.D.N.Y. May 8, 2020) (noting "[t]here is a 'strong presumption' that an appeal of an unstayed order is moot," which "may only be overcome when each of the [Chateaugay II factors] are present" (citation omitted)).

307 Assets argues that Sei's appeal is equitably moot because "(i) the Debtor and Purchaser closed on the Property sale, (ii) the Plan was consummated, (iii) Appellant sought no stay, and (iv) Appellant served no affected party but the Debtor with notice of the appeal." (Motion at 1-2.)  307 Assets further notes that it has paid all amounts due under the Plan, including Bankruptcy Court-approved legal fees, real estate broker fees, claims made by the City of New York, and amounts due to the United States Trustee (id. at 3), and has also provided records demonstrating that, post-confirmation, the deed for the Property was transferred pursuant to the Amended Plan, and the Property has since been encumbered with a new mortgage lien. (Id. at 5-46.)

Sei does not contest the assertion that the Amended Plan has been substantially consummated, but rather argues that the appeal is "primarily concerned with the approval of the sale of the Property by the Confirmation Order pursuant to 11 U.S.C. § 363," and is not equitably moot, per the language of 11 U.S.C. section 363(m), because "the sale [of the Property] was

conducted in bad faith." (Docket entry no. 12 ("Sei Reply Brief") at 7-8.) Sei alternatively argues that, even looking to the Chateaugay II factors, its appeal is not equitably moot because (i) effective relief can be granted by either reversing the sale or granting Sei a monetary award; (ii) 307 Assets has sold all of its assets and is not intending to re-emerge; (iii) there was only one transaction, the Property sale, and it "did not have intricacies which would be difficult to unravel"; (iv) there are "no other true parties in interest" that would require notice as the "Bankruptcy Court correctly determined this was a two-party dispute"; and (v) Sei opposed the Amended Plan and sale of the Property at several points throughout the 307 Assets Bankruptcy Case. (Docket entry no. 13 ("Sei Resp. Brief") at 2-4.)

As to Sei's first argument, the doctrine of equitable mootness calls for an analysis separate from the statutory limitation on appeals found in Section 363(m).[4] The doctrine looks to whether implementation of requested relief would be inequitable, not whether such relief could otherwise be conceivably fashioned, Chateaugay I, 988 F.2d at 325, and "applies to appeals of sale orders [under Section 363] as well as appeals from orders confirming plans of reorganization." In re Leatherstocking Antiques, Inc., No. 12-CV-7758-ER, 2013 WL 5423995, at *4 (S.D.N.Y. Sept. 27, 2013) (citing In re Motors Liquidation Co., 428 B.R. 43, 60 n.26 (Bankr. S.D.N.Y. 2010)). Thus, Sei's characterization of its appeal as an appeal of the sale approval pursuant to Section 363, as opposed to the confirmation of the Amended Plan itself,

---

[4]   Sei appears to suggest that the recent Supreme Court decision in MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288 (2023), precludes a finding that an appeal from a sale under Section 363 is equitably moot. (Sei Reply Brief at 7-8; Sei Resp. Brief at 1-2.) This argument conflates what courts in the Second Circuit had previously referred to as "statutory mootness" under Section 363(m) with the doctrine of "equitable mootness." The decision in MOAC invalidated only the former line of argumentation, finding that Section 363(m) contained a statutory limitation, rather than a jurisdictional bar. MOAC, 598 U.S. at 299-301, 304.

will not preclude review for equitable mootness even if such characterization were appropriate. Scrutiny for equitable mootness is particularly warranted in this case, where Sei does not contest that the Amended Plan has been substantially consummated, and Sei's failure to seek or obtain a stay of the Confirmation and Sale Approval Order left unimpeded the transfer pursuant to the Confirmation and Sale Approval Order of the sole asset of the debtor, the Property, and its subsequent encumbrance with a new mortgage lien.  In re LSC Communs., Inc., 631 B.R. 818 (Bankr. S.D.N.Y. 2021) (courts in the Second Circuit look for equitable mootness when an unstayed order results in a "'comprehensive change in circumstances' and when a reorganization is 'substantially consummated'" (citations omitted)); see also In re Leatherstocking Antiques, Inc., 2013 WL 5423995, at *4 (noting there is a "strong presumption" that an appeal of an unstayed order is moot where "sale of real property has closed" (citations omitted)).

        Turning then to the Chateaugay II factors, the Court finds that Sei has failed to meet its burden to establish each factor is present, such that the Confirmation and Sale Approval Order should be disturbed.  Beginning with the fifth and arguably most important factor, Sei failed, as noted, to pursue with diligence a stay of the "objectionable order," i.e., the Confirmation and Sale Approval Order.  See In re MPM Silicones, L.L.C., 874 F.3d 787, 804 (2d Cir. 2017) ("Although we require satisfaction of each Chateaugay II factor to overcome a mootness presumption, we have placed significant reliance on the fifth factor, concluding that a 'chief consideration under Chateaugay II is whether the appellant sought a stay of confirmation.'" (citation omitted)).  As a result, the Amended Plan has been all but fully implemented, with the Property transferred and subsequently encumbered with a new lien, and all amounts due under the Amended Plan paid, including claims with greater priority and Bankruptcy Court-approved legal fees and real estate broker fees.  (Motion at 3-4; App'ee Brief

at 10-11; 307 Assets Bankr. Case, docket entry nos. 81-83.) At no point did Sei seek to prevent the confirmed Amended Plan, including the close of the Property contemplated by the Amended Plan, from going into effect.

Sei argues that its inaction in seeking a stay was justified based on its perception that "the Bankruptcy Court was not going to stay the confirmation of the Plan which approved the Sale" in light of Sei's prior, unsuccessful attempts to oppose the Amended Plan and Property sale. (Sei Resp. Brief at 3-4.) The Second Circuit has repeatedly rejected this line of argument, and "insist[s] that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one." In re Metromedia Fiber Network, Inc., 416 F.3d 136, 144 (2d Cir. 2005) (citing Chateaugay I, 988 F.3d at 326). The great weight placed on this factor is in recognition of the fact that, in bankruptcy proceedings, "the ability to achieve finality is essential to the fashioning of effective remedies," and that "acts of reliance on unstayed bankruptcy confirmation orders should not be 'routinely vulnerable to nullification'" in order to promote successful debtor reorganizations. In re Fiorano Tile Imps., Inc., 517 B.R. 409, 416 (Bankr. E.D.N.Y. 2014) (quoting Chateaugay I, 988 F.2d at 325-26).

Sei argues that, under the first Chateaugay II factor, effective relief from the unstayed order can nonetheless be fashioned because the Property sale could be reversed, or Sei could be awarded monetary relief. (Sei Resp. Brief at 3.) As to a monetary award, Sei does not explain the basis upon which it would be entitled to monetary relief in this appellate posture. As to the reversal of the sale, even if such relief were possible, it would clearly be inequitable to the First Mortgagee at this juncture to reverse the sale of the Property, which is now encumbered with a new mortgage lien, and to force the First Mortgagee to unwind its transactions following the close of sale. In re Metromedia Fiber Network, Inc. 416 F.3d at 145 ("In the absence of any

request for a stay, the question is not solely whether we <u>can</u> provide relief without unraveling the Plan, but also whether we <u>should</u> provide such relief in light of fairness concerns." (emphasis in original)). Such relief would also unravel the Amended Plan, to the prejudice of the City of New York, the United States Trustee, and the real estate broker who oversaw the Property sale, all of whom were paid in accordance with the Amended Plan following its confirmation. (Motion at 3-4; 307 Assets Bankr. Case, docket entry nos. 81-83.) Nor does Sei establish, with regard to the fourth <u>Chateaugay</u> factor, whether these entities and the First Mortgagee have been notified of the instant appeal, such that their opposition to the appeal, if any, could have been heard.[5]

       In sum, Sei has failed to meet its burden to establish each of the <u>Chateaugay II</u> factors. Accordingly, Sei is unable to overcome the presumption that the instant appeal is equitably moot. The Amended Plan has been substantially consummated, and Sei's failure to seek or obtain a stay of the Sale approval has resulted in a comprehensive change of circumstances, such that reversal of the Sale would now be inequitable to the debtor and affected parties under the Amended Plan. The Court therefore grants 307 Assets' motion to dismiss the instant appeal on equitable mootness grounds.

## CONCLUSION

       For the foregoing reasons, the motion to dismiss the Appeal as equitably moot is granted.

---

[5] Sei argues that such notification is unnecessary because "the Bankruptcy Court correctly determined this was a two-party dispute." (Sei Resp. Brief at 3.) However, the Bankruptcy Court only characterized the dispute as a "two-party dispute" at the confirmation hearing for the Amended Plan because, by that time, "all other credit creditors ha[d] voted to accept the plan and no other party in interest ha[d] filed an objection," save for Sei. (Conf. Hrg. Tr. at 58.)

      This Memorandum Order resolves docket entry no. 10.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: New York, New York
       September 30, 2024

      /s/ Laura Taylor Swain
     LAURA TAYLOR SWAIN
     Chief United States District Judge